**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

**ARCHDIOCESE OF MILWAUKEE**
    Plaintiff and Counter-Defendant, and

**DONALD MARSHALL**
**DEAN WEISSMULLER**
    Additional Plaintiffs,
  vs.

Case No. 13-C-58

Hon. Rudolph T. Randa

**STONEWALL INSURANCE COMPANY**;
**CERTAIN UNDERWRITERS AT LLOYD'S,**
**LONDON, et al.,**
    Defendants and Counter-Plaintiffs.

## LONDON MARKET INSURERS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT IN RESPONSE TO THE ARCHDIOCESE OF MILWAUKEE'S OPPOSITION BRIEF

Dated: August 16, 2013

Catalina J. Sugayan
Marcos G. Cancio
SEDGWICK LLP
One North Wacker Drive, Suite 4200
Chicago, Illinois 60606
Telephone: (312) 641-9050
Facsimile: (312) 641-9530

Russell W. Roten
Jeff D. Kahane
DUANE MORRIS LLP
865 S. Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
Telephone: (213) 689-7400
Facsimile: (213) 689-7401

Attorneys for Defendants and Counter-Plaintiffs
London Market Insurers

CH/466747v1

**Table of Contents**

I. INTRODUCTION ..........................................................................................................1

II. LMI ARE ENTITLED TO SUMMARY JUDGMENT ON THE ARGUMENTS AND FACT ASSERTIONS CONCEDED BY THE ARCHDIOCESE ........................................2

III. NEGLIGENT MISREPRESENTATION CLAIMS ARE NOT COVERED .....................5

    A. The Weissmuller Complaint ...................................................................5

    B. Negligent Misrepresentation Is Not Covered Under LMI's Policies........................6

IV. THE ARGUMENTS THAT THE LMI POLICIES COVER VOLITIONAL ACTS OR FRAUD ARE JUST WRONG.................................................................................10

    A. The Archdiocese Ignored the "Unexpected and Unintended" Requirement in the LMI Policies' Definition of "Occurrence" ................................10

    B. The Terms "Events" and "Happenings" In The LMI Policies Do Not Provide Coverage for Fraud or Volitional Acts ..................................11

    C. The Archdiocese Has Not Properly Distinguished the *GATX Leasing Corp.* and *Red Ball Leasing* Cases..........................................14

    D. The Fortuity and Known Loss Doctrines and Wisconsin Public Policy Prohibit Coverage for Claimants' Claims..............................................14

V. LMI Can Seek and Obtain Rulings From This Court Regarding Coverage for the Archdiocese's Liability Arising From Other Claimants' Claims ......................................15

VI. CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*American Family Mut. Ins. Co. v. Schmitz,* 330 Wis.2d 263, 269, 793 N.W.2d 111, 114
 (Wis. App. 2010) ...................................................................................................3

*A.O. Smith Corp. v. Allstate Ins. Cos.,* 222 Wis.2d 475, 588 N.W.2d 285
 (Wis. App. 1998), pet. denied, 590 N.W.2d 489 (Wis. 1999) ...............................11

*C&N Corp. v. Kane,* --- F.Supp.2d ---, 2013 WL 2947777 at *3-4 (E.D. Wis. June 14, 2013) .....4

*Estate of Sustache v. American Family Ins. Co.,* 311 Wis.2d 548, 751 N.W.2d 845
 (Wis. 2008) ...........................................................................................................12

*Everson v. Lorenz,* 280 Wis.2d 1, 695 N.W.2d 298 (Wis. 2005) ............................................7,8,9

*Folkman v. Quamme,* 264 Wis.2d 617, 665 N.W.2d 857 (Wis. 2003) .........................................12

*GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112 (7th Cir. 1995) ..................14

*Global ADR, Inc. v. City of Hammong,* 2004 WL 2694902 (E.D. La. 2004) ..............................13

*Guckenberg v. Wisc. Cent. Ltd.,* 178 F.Supp.2d 954, 961 (E.D. Wis. 2001) ..................................4

*Hedtcke v. Sentry Ins. Co.,* 109 Wis.2d 461, 326 N.W.2d 727 (Wis. 1982) .................................14

*In re Archdiocese of Milwaukee,* 470 B.R. 495 (2012) ................................................................5

*Jackson v. Kohlwey*, 2010 U.S. Dist. Lexis 26214, *21-22, 2010 WL 1186282
 (E.D.Wis. Mar. 19, 2010) ........................................................................................5

*John Does 1,2,3 and Linneman v. Archdiocese of Milwaukee,* 303 Wis.2d 34,
 734 N.W.2d 827 (Wis. 2007) ...................................................................................6

*John Does 1, 2, 3 and Linneman v. Archdiocese of Milwaukee (One Beacon)*, 330 Wis.2d 666,
 794 N.W.2d 468 (Ct. App. 2010) .........................................................................7,8

*K.A.G. v. Stanford,* 148 Wis.2d 158, 165, 434 N.W.2d 790, 793 (Wis. App. 1988) .....................11

*Kaloti Enters., Inc. v. Kellogg Sales Co.,* 283 Wis.2d, 555, 699 N.W.2d 205 (Wis. 2005) ...........6

*Kremers-Urban Co. v. American Employers Ins. Co.,* 119 Wis.2d 722, 351 N.W.2d 156
 (Wis. 1984) ...........................................................................................................14

*Laborers' Int'l Union of N. Am. V. Caruso,* 197 F.3d 1195 (7th Cir. 1999) ..................................4

*Meracle v. Children's Social Services of Wisconsin*, 144 Wis.2d 19,
 437 N.W.2d 532 (1989) ...........................................................................................5

*Nierengarten v. Lutheran Social Services of Wisconsin,* 219 Wis.2d, 686 580 N.W.2d 320
    324-325 (1998) ..................................................................................................................5

*Nordock Inc. v. Systems Inc.,* 2013 WL 694702, --- F.Supp.2d ---, at *9
    (E.D. Wis. Feb. 26, 2013) ................................................................................................4

*Ollerman v. O'Rourke Co., Inc.,* 94 Wis.2d 17, 288 N.W.2d 95 (1979) ........................................6

*Olson v. Farrar*, 338 Wis.2d 215 809 N.W.2d 1 (Wis. 2012) .......................................................3

*Public Serv. Co. v. Continental Casualty Co.,* 26 F.3d 1508 (10th Cir. 1994) ..............................12

*Red Ball Leasing, Inc. v. Hartford Acc. And Indem. Co.,* 915 F.2d 306 (7th Cir. 1990) ...............14

*Salas v. Wisconsin Dep't of Corr.,* 493 F.3d 913 (7th Cir. 2007) ...................................................4

*Schinner v. Gundrum,* 2013 WI 71, --- Wis.2d ---, ---N.W.2d ---
    (Wis. Jul 12, 2013) ...............................................................................................7,8,9,12,13

*Staudt v. Artifex Ltd.*, 16 F. Supp.2d 1023 (E.D. Wis. 1998) .........................................................4

*Stuart v. Weisflog's Showroom Gallery, Inc.,* 311 Wis.2d 492,
    353 N.W.2d 488(Wis. 2008) .......................................................................................6,7,8

*United Pacific Ins. Co. v. First Interstate Bancsystems,* 664 F.Supp. 1390 (D. Mont. 1987) ......13

*United Pacific Ins. Co. v. The McGuire Co.,* 229 Cal.App.3d 1560, 281 Cal. Rptr. 375
    (Cal.App. 1991) ..............................................................................................................13

**Rules**

FED. R. CIV. P. 56(e)(2) ..................................................................................................................4

I.     INTRODUCTION

The Motion for Partial Summary Judgment ("MSJ")[1] filed by London Market Insurers ("LMI") presents two threshold legal issues: LMI have no indemnity obligation for claims where the Archdiocese is not legally obligated to pay; and, the LMI Policies do not provide coverage for fraud or volitional acts.

The Archdiocese's Opposition does not contest that Claimants' Claims for negligence are barred by the statute of limitations, that it is not liable for previously litigated and/or settled claims, and that it is not liable for Claims alleging abuse by non-Diocesan religious or laypersons. It also does not dispute that the LMI Policies do not provide coverage for Claims where the alleged abuse occurred outside of LMI's periods from 1967 to 1973. In addition, the Archdiocese acknowledged it is not seeking coverage for Claims alleging fraud. The Archdiocese is only seeking coverage for Claimant Weissmuller's claim of "Fraud" (Negligent Misrepresentation).[2]

The Court should find in favor of LMI and grant their MSJ because negligent misrepresentation is a "volitional" act not covered under liability policies as repeatedly recognized by the Wisconsin Courts. The Court should reject the Archdiocese's contention that the LMI Policies are "non-standard" and cover volitional acts and fraud. That contention is based on incorrect interpretations of plain policy language which overlook the terms in the LMI Policies, and the Archdiocese's reliance on a handful of cases not from Wisconsin with no precedential value, different policy language and distinguishable facts.

---

[1] Citations are as follows: "LMI Br." refers to LMI's Memorandum in Support of their Motion for Partial Summary Judgment ("MSJ"). "Cl. Br." refers to the Additional Plaintiffs' Opposition to LMI's MSJ. "AOM Br." refers to the Archdiocese's Opposition to LMI's MSJ. "LMI Reply to AOM Br." refers to LMI's Reply In Support of their MSJ In Response to the Archdiocese's Opposition Brief. "LMI Reply to Cl. Br." refers to "Reply in Support of Their Motion for Partial Summary Judgment in Response to the Additional Plaintiffs' Opposition Brief."

[2] LMI believe they are entitled to assert their MSJ as to all Claimants who have filed Proofs of Claim in the Bankruptcy Proceeding. LMI refer to and incorporate by reference herein their Reply in Support of Their Motion for Partial Summary Judgment in Response to the Additional Plaintiffs' Opposition Brief.

## II. LMI ARE ENTITLED TO SUMMARY JUDGMENT ON THE ARGUMENTS AND FACT ASSERTIONS CONCEDED BY THE ARCHDIOCESE[3]

The Archdiocese did not dispute and conceded for Summary Judgment the following arguments and fact issues:

1) LMI argued in their MSJ that there can be no coverage where a Claimant alleged causes of action that were barred by statutes of limitations, including, but not limited to, negligence, because the Archdiocese would have no legal liability for such claims. (LMI Br. pp.7-8,12-14, SF¶92, JN¶¶582-83, 1-579 Exs. "c"). The Archdiocese did not address these arguments or dispute LMI's fact assertions.

2) LMI argued in their MSJ that 98 of the 576 Claims involve Claimants who indicated in their Proofs of Claim that they entered into prior settlements with the Archdiocese. (LMI Br. p.14; SF¶¶85-86). The Archdiocese failed to address LMI's arguments or dispute LMI's fact assertions.

3) LMI argued in their MSJ that at least 157 Claims made against the Archdiocese involved allegations of abuse perpetrated by religious order priests, nuns, and lay persons who are not officials or employees of the Archdiocese, for which the Archdiocese filed objections in the Bankruptcy Proceeding to disallow these Claims. (*See* LMI Br. p. 15, SF¶¶88-91; JN¶¶1-579, Exs. "c"). The Archdiocese failed to address LMI's arguments or dispute LMI's fact assertions.

4) The Archdiocese did not contest LMI's arguments that there is no coverage for any Claimant where the alleged abuse is outside of the LMI policy periods effective from July 1967 to August 1973, including Additional Plaintiff Marshall.

---

[3] The Archdiocese's Opposition Brief has a section titled "Background Facts" that reads like argument and LMI treats it as such. The Weissmuller Complaint and the LMI Policies speak for themselves, and LMI specifically deny the Archdiocese's "facts" to the extent that they are inconsistent with these documents.

(AOM Br.p.4, n.1). Thus, LMI are entitled to a ruling as a matter of law that their Policies do not provide coverage to any Claimant where the alleged abuse took place outside the periods from 1967 to 1973.

5) LMI's Affirmative Defenses and Counterclaim requested a declaration that there is no coverage for fraud under the LMI Policies. The Archdiocese does not dispute that there is no coverage for fraud under the LMI Policies and in its Opposition asserted it "has not sought or requested coverage for any intentional fraud counts in these cases". (AOM Br. p. 19).

6) The Archdiocese failed to address LMI's arguments that the damages stemming from fraud or intentional conduct are distinct from tort damages stemming from claims for bodily injury. (*See* LMI Br. p. 25).

7) The Archdiocese failed to address LMI's arguments that fraud necessarily causes "some" injury and that pursuant to established Wisconsin precedent, only *some* injury or harm flowing from the intentional act is required to preclude coverage under the LMI Policies' definition of occurrence and that the Archdiocese's "intent to injure" should be inferred as a matter of law. (*See* LMI Br. pp. 20-24).

8) The Archdiocese admits that LMI have no liability unless a judgment is entered against it. The Archdiocese concedes that "of course the LMI do not have to pay for any judgment against the Archdiocese if one also presumes that no such judgment by Mr. Weissmuller can or will be entered". (AOM Br. p.2). [4]

---

[4] The Archdiocese did not dispute that the LMI Policies are indemnity policies, where "Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to <u>indemnify</u> the Assured…." (LMI SF ¶101). Wisconsin courts recognize that the duty to indemnify is narrower than the duty to defend and indemnity is owed only when the Insured can show loss covered under the terms of the policy. *Olson v. Farrar*, 338 Wis.2d 215, 228, 809 N.W.2d 1, 7 (Wis. 2012). The Archdiocese has the burden of proving that there is a potential for coverage for the Claims under the LMI Policies. *American Family Mut. Ins. Co. v. Schmitz*, 330 Wis.2d 263, 269, 793 N.W.2d 111, 114 (Wis. App. 2010).

The Archdiocese, having failed to address or dispute LMI's arguments and fact assertions as set forth above, has conceded them for purposes of summary judgment. A party who fails to address assertions of fact made in the moving party's motion for summary judgment bears the risk that such facts will be deemed undisputed by the court. Fed. R. Civ. P. 56(e)(2); *See Nordock Inc. v. Systems Inc.,* --- F.Supp.2d ---, 2013 WL 694702 at *9 (E.D. Wis. Feb. 26, 2013) ("the Court will deem uncontroverted statements of material fact admitted solely for the purposes of deciding summary judgment"); *see also C&N Corp. v. Kane*, --- F. Supp.2d ---, 2013 WL 2947777 at *3-4 (E.D. Wis. June 14, 2013) (statement of proposed materials facts deemed admitted when opponent failed to oppose a summary judgment motion by providing "a concise response to the moving party's statement of facts" that contained "a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph"); *Staudt v. Artifex Ltd.*, 16 F. Supp.2d 1023, 1033 (E.D. Wis. 1998) (plaintiff failed to call into question any of defendant's proposed findings of fact, and as a result "the court is obliged to conclude that there is no genuine issue as to any of Admiral's proposed factual findings").

The non-moving party must also address in its opposition brief the summary judgment arguments raised by the moving party, and the failure to do so results in summary judgment for the moving party. *Guckenberg v. Wisc. Cent. Ltd.*, 178 F. Supp. 2d 954, 961 fn. 1 (E.D. Wis. 2001) (granted defendants' motion for summary judgment based partly on the plaintiffs' failure to address the defendants' arguments); *see also Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007) (a party forfeits any argument that it fails to raise in its brief opposing summary judgment); *Laborers' Int'l Union of N. Am. v. Caruso,* 197 F.3d 1195, 1197 (7th Cir. 1999) (arguments not presented to the district court in response to summary judgment motions

are waived); *Jackson v. Kohlwey*, 2010 U.S. Dist. Lexis 26214, *21-22, 2010 WL 1186282 (E.D. Wis. Mar. 19, 2010) (granting defendants' motion for summary judgment on the plaintiff's action based partly on the plaintiff's failure to respond to the defendants' arguments).

Accordingly, LMI are entitled to rulings as a matter of law that there is no coverage under their Policies for: Claimants who asserted Claims that are barred by the statutes of limitations; Claims with prior settlements; Claimants who alleged abuse by perpetrators who were not officials or employees of the Archdiocese; Claims where the alleged abuse took place outside of the LMI periods of coverage from July 1967 to August 1973; and, Claims for fraud.

### III. NEGLIGENT MISREPRESENTATION CLAIMS ARE NOT COVERED

The Archdiocese is only seeking coverage for Claims alleging negligent misrepresentation. (AOM Br. p. 2). The negligent misrepresentation claims, to the extent they may present legal liability,[5] involve volitional acts not covered under the LMI Policies. The Archdiocese seeks to avoid controlling law by mischaracterizing the Claims and misreading the definition of Occurrence.

#### A. The Weissmuller Complaint

The Archdiocese argues that the Weissmuller Complaint alleges "negligence" (AOM Br. p. 4); however, the causes of action there against the Archdiocese are: (I) "Fraud"; (II) "Fraud (Intentional Non-Disclosure)"; and, (III) "Fraud (Negligent Misrepresentation)". (SF¶43-44). The Archdiocese strains throughout its brief to incorrectly place emphasis on the so-called

---

[5] Arguably, if a negligent misrepresentation claim is not a "fraud" claim (even though Wisconsin law holds it still has a volitional/intentional component), then it is a claim governed by the three year limitations period applicable to negligence actions, or, in the alternative, the six year statute of limitations applicable to fraud. (*See* LMI Br. pp. 7-8). Bankruptcy Court Judge Kelly found that certain hybrid negligence claims asserted by the Claimants were barred by the statute of limitations. *See In re Archdiocese of Milwaukee*, 470 B.R. 495, 505 (2012); *See also Nierengarten v. Lutheran Social Services of Wisconsin*, 219 Wis.2d 686, 695-698, 580 N.W.2d 320, 324-325 (1998) (negligent misrepresentation claim for damages arising out of placement of adopted child was barred by three year statute of limitations); *Meracle v. Children's Social Services of Wisconsin*, 149 Wis.2d 19, 25-30, 437 N.W.2d 532, 534-536 (1989) (negligent misrepresentation claims for damages arising out of placement of adopted child was calculated using the three year statute of limitations).

5

"negligence" allegations in the Complaint, but the Complaint speaks for itself. [6] The Archdiocese is not seeking coverage for Count (I) "Fraud" and did not address Count (II) "Fraud (Intentional Non-Disclosure)", probably because this cause of action has not been recognized as a tort in Wisconsin. *See Kaloti Enters., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205 (Wis. 2005) ("we have never held that a claim for strict responsibility for misrepresentation or negligent misrepresentation can arise from failure to disclose"); *see also Ollerman v. O'Rourke Co.*, 288 N.W.2d 95, 1112 (Wis. 1980) (declined to adopt negligent misrepresentation by non-disclosure claim). Count III "Fraud (Negligent Misrepresentation)" is an attempt by certain Claimants to avoid the statute of limitations that applies to negligence claims and was added after the Wisconsin Supreme Court decision in *John Does 1,2,3 and Linneman v. Archdiocese of Milwaukee*, 303 Wis.2d 34, 734 N.W.2d 827 (Wis. 2007) (hereafter "*Doe I*").

### B. Negligent Misrepresentation Is Not Covered Under LMI's Policies

The Wisconsin Courts have already examined and dismissed the Archdiocese's arguments that there is coverage under occurrence policies for negligent misrepresentation. The Wisconsin Supreme Court recognizes that negligent misrepresentation is a cause of action that has an intentional volitional intent component for which there is no coverage under Wisconsin law. *See Stuart v. Weisflog's Showroom Gallery, Inc.* ("*Stuart II*"), 311 Wis.2d 492, 509, 753 N.W.2d 448, 456 (Wis. 2008) (no coverage for contractor's misrepresentations because no

---

[6] The Weissmuller Complaint is replete with allegations of the Archdiocese's volitional and fraudulent conduct. For example, the Complaint contains the following general allegations: ¶8 "in approximately 1955 to 1957, Father David Walsh reported to Archbishop Albert Meyer that several deaf boys had reported to him that Father Murphy had sexually molested them"; ¶ 21 "by placing Lawrence Murphy and allowing him to function as a priest in good standing with the Archdiocese of Milwaukee, at St. John's in approximately 1950 and continuing until approximately 1974, Defendant Archdiocese, . . . affirmatively represented to minor children and their families . . . that Lawrence Murphy did not have a history of molesting children, that Defendant Archdiocese did not know or suspect that Lawrence Murphy had a history of molesting children and that Defendant Archdiocese did not know that Lawrence Murphy was a danger to children"; and, ¶26 "defendant[s] made these representations with knowledge and intent that they would be communicated to the minor plaintiff . . . [with] reason to believe that the representations . . would influence the amount and type of time spent alone with Murphy". The "Fraud (Negligent Misrepresentation)" count includes the following allegations: ¶55 "Defendant Archdiocese, through its agents including Archbishop Cousins, represented to plaintiff and his family that Murphy did not have a history of molesting children and that Murphy was not a danger to children"; and, ¶66 "Plaintiff believed and justifiably relied upon Defendant Archdiocese's representations, which caused him to be sexually molested by Murphy . . . and suffer the other damages described herein." (SF ¶44, SF Ex. S).

6

occurrence); *Everson v. Lorenz*, 280 Wis.2d 1, 695 N.W.2d 298, 303 (Wis. 2005) (no coverage and no occurrence for negligent misrepresentation even though the insured may have made a mistake); *Schinner v. Gundrum*, 2013 WI 71, --- N.W.2d ----, (Wis. Jul 12, 2013) (discussed below); *see also Does/Linneman v. Archdiocese of Milwaukee (One Beacon)* (hereafter "*Does (One Beacon)*"), 330 Wis.2d 666, 679-680, 794 N.W.2d 468, 474 (Wis. App. 2010) (no coverage for claims alleging negligent misrepresentation filed by Mr. Weissmuller and others).

In *Everson*, the plaintiff purchased land from the defendant after the defendant mistakenly reported in a real estate report that the lot was not located within a 100-year flood plain. *Everson*, 280 Wis.2d at 6-7. The *Everson* Court found that although the misrepresentation in the report was a typographical error, it did not fit the definition of "occurrence" because for the defendant to be held liable, he "must have asserted a false statement, and such an assertion required a degree of volition inconsistent with the term accident." *Id.* at 14. The Court found that "where there is a volitional act involved in such a misrepresentation, that act removes it from coverage as an 'occurrence' under the liability insurance policy." *Id. at 15.*

In *Stuart II*, a building contractor performed substantial work on a home and the homeowner later discovered numerous significant defects in the work. *Stuart II*, 311 Wis.2d at 500. The homeowner sued the contractor, alleging deceptive practices under the Home Improvement Trade Practices Act. *Id.* The Court concluded that "a *result,* though unexpected, is not an accident; rather it is the *causal event* that must be accidental for the event to be an accidental occurrence." *Id.* at 515. The Court in *Stuart II* further concluded that "it does not matter whether [Defendant] intended a specific result; what matters is whether the cause of the damage was accidental." *Id.* at 516.

7

In *Does (One Beacon),* a consolidated appeal of 13 underlying lawsuits (including Additional Plaintiffs), the Wisconsin Court of Appeals considered coverage for claims of negligent misrepresentation against the Archdiocese similar to those found in Weissmuller's Complaint. 330 Wis.2d 666, 794 N.W.2d 468 (Ct. App. 2010). (*See also* LMI SF, ¶¶ 44). The Court, after examining the holdings in *Everson* and *Stuart II*, concluded that the Archdiocese's representations constituted volitional acts that were not subject to coverage. *Does (One Beacon),* 330 Wis.2d at 680-681. While the Archdiocese argued that "because the complaints acknowledge that the Archdiocese did not intend or anticipate that the plaintiffs would be harmed, coverage for the acts alleged in the Complaints exists," the Court found that "the cause of the plaintiffs' injuries, the misrepresentation by the Archdiocese, cannot be characterized as accidental [and that the] affirmative representation of safety by the Archdiocese did not occur by chance, nor was it unforeseen or unintended ... [r]ather, the misrepresentation of safety…constitutes an 'act of making a false or misleading statement about something.'" *Id.* at 679-80. Similar to the allegations of "Fraud (Negligent Misrepresentation)" made by Weissmuller and other Claimants, the Court in *Does (One Beacon)* found the allegations of the "Archdiocese's awareness of the priests' histories of molestation and its non-disclosure to the plaintiffs may have been prompted by negligence, but it is nevertheless devoid of any suggestion of accident" and instead constituted "volitional acts." *Id.* at 680-81.

After LMI filed their Motion for Partial Summary Judgment, the Wisconsin Supreme Court published *Schinner v. Gundrum*, 2013 WI 71, --- N.W.2d --- (Wis. Jul 12, 2013), which reaffirmed Wisconsin's long line of precedents finding no coverage for intentional or volitional acts. In *Schinner*, the insured hosted an underage drinking party where a guest assaulted and seriously injured another guest. 2013 WI 71 at ¶2. The Court held that the insured's actions of

8

setting up the party, procuring alcohol, inviting underage guests and encouraging them to drink, including guests known to become belligerent when they drink, were intentional actions. *Id.* at ¶8. The court noted the insured's many intentional wrongful acts were a "substantial factor" in causing the victim's injuries and the insured's intentional actions "created a direct risk of harm resulting in bodily injury, notwithstanding his lack of intent that a specific injury occur." *Id.* The Court focused its analysis on the insured's actions, not the guest's assault on the plaintiff. *Id. at ¶¶* 66-69. The Court also acknowledged Wisconsin's strong public policy "weighing against finding an occurrence in this situation," reaffirmed Wisconsin's adherence to the fortuity doctrine, and held that "[f]inding an occurrence and coverage under these circumstances would allow the host to escape responsibility for his intentional and illegal actions." *Id.* at ¶¶ 79-80.

Here, there is no potential for coverage under the LMI policies because Weissmuller's and the Claimants' allegations of intentional or volitional conduct against the Archdiocese are arguably much worse than the allegations made against the insured in *Schinner*. It is alleged that the Archdiocese misrepresented to minor children and their families that dozens of pedophile priests did not have a history of molesting children, that it did not know or suspect the priests' history of child sexual abuse, and that it did not know that such pedophile priests were a danger to children. (*See* LMI SF¶ 44). It is also alleged that the Archdiocese knowingly moved priests with histories of sexual abuse of children to other parishes, schools, or churches. (*Id.*). In order to be liable to the Claimants, the Archdiocese "must have asserted a false statement, and such assertion required a degree of volition." *See Everson*, 280 Wis.2d at 14-15. No coverage exists even though the Archdiocese argues it did not intend the injuries to claimants because its actions "created a direct risk of harm" to Weissmuller's and the Claimants "notwithstanding [the Archdiocese's] lack of intent that a specific injury occur." *Schinner*, 2013 WI 71 at ¶8. Finally,

finding coverage under these circumstances would be manifestly against Wisconsin public policy because it would allow the Archdiocese to "escape responsibility for [it's] intentional and illegal actions." *Id.* at ¶80.

IV. THE ARGUMENTS THAT THE LMI POLICIES COVER VOLITIONAL ACTS OR FRAUD ARE JUST WRONG

The Archdiocese ignores the "unexpected and unintentional" requirement in the LMI Policies. In addition, its argument that the LMI Policies are "non-standard" and cover fraud and misrepresentation relies on misinterpretation of plain policy terms and on a handful of decisions from outside Wisconsin that address different facts and policy language and are not controlling legal precedent.

A. The Archdiocese Ignored the "Unexpected and Unintended" Requirement in the LMI Policies' Definition of "Occurrence"

The Archdiocese failed to address the full definition of "occurrence" in the LMI Policies, which is not just "an accident or a happening or event or a continuous or repeated exposure to conditions", but also includes: "which ***unexpectedly and unintentionally*** results in personal injury…during the policy period". (LMI SF¶ 102) (emphasis added). Far from the Archdiocese's "four-parts" argument, there are at least three additional requirements the insured must prove for purposes of showing a loss constituting an "occurrence" under the Insuring Agreement: (1) the accidents or happenings or events or exposure to conditions must "unexpectedly and unintentionally", (2) result in "personal injury", (3) "during the policy period."

LMI are entitled to judgment on this issue because the Archdiocese failed to even address the arguments in LMI's MSJ Brief. (*See* LMI Br. pp.20-24). The Archdiocese admitted in its Opposition, "in reading the plain language of the policy, no sentence, phrase and word is to be construed so as to render other words or provisions superfluous, meaningless or void". (AOM Br. p. 9). This Court must interpret and apply the full policy language.

10

Here, because the Archdiocese allegedly engaged in fraudulent or intentional or volitional acts, this Court should infer as a matter of law that the Archdiocese *must* have intended "*some*" injury, which would violate the "unexpectedly and unintentionally" requirement in the LMI Policies' definition of "occurrence". Under established Wisconsin precedent, only some injury or harm following from an unintentional act is required to preclude coverage under the LMI Policies' definition of occurrence. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis.2d 475, 588 N.W.2d 285 (Wis. App. 1998), pet. denied, 590 N.W.2d 489 (Wis. 1999) (coverage is precluded if "the insured intended or expected *some* injury or harm to follow from act"); See also *K.A.G. v. Stanford,* 148 Wis.2d 158, 165, 434 N.W.2d 790, 793 (Wis. App. 1988) (inferring intent to injure as matter of law).

### B. The Terms "Events" and "Happenings" In the LMI Policies Do Not Provide Coverage for Fraud or Volitional Acts

The LMI Policies define the term "occurrence" to mean an "accident," or "event," or "happening," or "continuous or repeated exposure to conditions," but these terms do not provide "unrestricted coverage" as argued by the Archdiocese. (*See* AOM Br. p. 14). The terms "events" and "happenings" must be given their plain meaning and be read in the context of all of the policy terms and conditions. Here the terms "events" and "happening" are found within the definition of an "occurrence", which requires unexpected and unintended injury. In addition, nowhere in the Policies, including the Personal Injury Definition, are fraud or misrepresentation even mentioned as possibly being covered perils. Not only is the Archdiocese attempting to fabricate coverage where none exists, it is also suggesting potential ambiguities by referring to discrimination and other conduct that is not even at issue here. The Wisconsin Supreme Court, citing to Couch on Insurance, recognized that "sometimes it is necessary to look beyond a single clause or sentence to capture the essence of an insurance agreement [and] the language of a

11

policy should not be made ambiguous by isolating a small part from the context of the whole" *Folkman v. Quamme*, 264 Wis.2d 617, 665 N.W.2d 857 (Wis. 2003) (citing 2 Lee R. Russ and Thomas S. Segalla, *Couch on Insurance 3d* § 21:14 (3d Ed. 1999 and Supp.2002)). Wisconsin Courts interpret insurance policies "as would be understood by a reasonable person" while "giving effect to the intent of the contracting parties". *Schinner,* 2013 WI 71, ¶38.

What the Archdiocese does not say haunts and guts its argument. The Archdiocese ignores the explanation for the terms "event" and "happening" that other courts and commentaries have described were included to provide coverage for losses happening over time (*See* LMI Br. pp.19-20)[7]. The Archdiocese also argues that "*courts*" have found… (*see* AOM Br. p. 12), or "*other* courts equally recognize…" (*see* AOM Br. p. 13). What the Archdiocese does not say is that "*Wisconsin* courts" have found, or "*Wisconsin* courts equally recognize…." The Archdiocese relies exclusively on a small handful of cases from other jurisdictions, which do not apply or interpret Wisconsin law, and in any event, are readily distinguishable.

For example, the Archdiocese relies heavily on *Public Serv. Co. v. Continental Casualty Co.*, 26 F.3d 1508 (10th Cir. 1994). Not only is *Public Service* decided under Colorado law, not Wisconsin law, it involved policy language that <u>did not</u> include the requirement that the accident or a happening or event or… the exposure to conditions… "**unexpectedly and unintentionally** results in personal injury … during the policy period." *Id.* at 1515. It also addressed coverage for a discrimination claim where the term "personal injuries" expressly included "discrimination". *Id.* at 1511. Nowhere is there a finding that the policy at issue covered fraud or volitional conduct such as negligent misrepresentation.[8]

---

[7] See also *Estate of Sustache v. American Family Ins. Co.,* 2008 WI 87, ¶43, 311 Wis.2d 548, 751 N.W.2d 845 (2008) (holding that a pattern of volitional action was non-accidental activity).

[8] The Archdiocese argued that the LMI Policies cover volitional acts or fraud because the definition of "Personal Injuries" includes some intentional torts. This ignores the Insuring Agreement that still requires an accident, event, happening, or exposure

12

Case 2:13-cv-00058-RTR   Filed 08/16/13   Page 16 of 20   Document 62

The Archdiocese also relies on *United Pacific Ins. Co. v. First Interstate Bancsystems*, 664 F.Supp. 1390 (D. Mont. 1987). This case interpreted Montana law and has not been cited by any Wisconsin State or Federal Court, or the Seventh Circuit Court of Appeals. It involved claims of wrongful termination where the "crux of the case, [was] whether the termination unexpectedly or unintentionally resulted in personal injury." *Id.* at 1393. The Court found "[t]he complaint did not expressly allege intentional and deliberate conduct" because the plaintiff alleged that the defendant employer just acted "negligently" and noted that under Montana law, negligence is a proper basis for recovery in wrongful termination action. *Id.*

The Archdiocese also relies on *Global ADR, Inc. v. City of Hammond,* 2004 WL 2694902 (US Dist. E.D. La. Nov. 23, 2004), an unpublished opinion that did not apply Wisconsin law, and involved policy language that did not contain the "unexpectedly and unintentionally" requirement found in the LMI Policies.

Lastly, the Archdiocese relies on *United Pacific Insurance Company v. The McGuire Company*, 229 Cal.App.3d 1560, 281 Cal. Rptr. 375 (Cal. App. 1991). This case relied on a different definition of "occurrence" than that found in the LMI Policies and the court there examined coverage for purposes of an Insurer's duty to defend, which is much broader than the duty to indemnify at issue here.

In sum, the Archdiocese has not cited to a single Wisconsin case that finds coverage for fraud or intentional or volitional acts, including negligent misrepresentation. Wisconsin law is clear that there is no coverage under "occurrence" policies or under Wisconsin public policy for the claims asserted against the Archdiocese. *See Schinner, supra.*

---

to conditions, that "unexpectedly or unintentionally" results in the given "personal injury" during the policy period. Moreover, the Fraud and Fraud (Negligent Misrepresentation) are not specifically enumerated in the Personal Injury Definition (*See* LMI SF¶102).

13

Case 2:13-cv-00058-RTR  Filed 08/16/13  Page 17 of 20  Document 62

C.  **The Archdiocese Has Not Properly Distinguished the *GATX Leasing Corp*. and *Red Ball Leasing* Cases**

The Archdiocese's long-winded attempts to distinguish *GATX Leasing Corp.* and *Red Ball Leasing* backfire. In *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1116-17, n.9 (7th Cir. 1995), the court found that there was no occurrence because the intentional tort alleged in that case did not result in "unexpected or unintended damage." (*See* LMI Br. p.18). The Archdiocese's argument that Weissmuller and the Claimants merely allege "negligence" is of no avail since Negligence is barred by limitations and "Fraud" and "Fraud (Negligent Misrepresentation)" require volition and intentional conduct. With regard to *Red Ball Leasing, Inc. v. Hartford Acc. and Indem. Co.*, 915 F.2d 306, 309-10 (7th Cir. 1990), the Archdiocese does not explain away the Court's rationale, which recognized the fundamental difference between an accidental loss, for which there might be coverage, and the risk of loss from intentional acts, which is not covered. The Archdiocese cites to *Kremers-Urban Co. v. American Employers Ins. Co.,* 119 W.2d 722, 351 N.W.2d 156 (Wis. 1984), but the reason for including it is vague at best as that case involves trigger of coverage, not intentional or volitional conduct.

D.  **The Fortuity and Known Loss Doctrines and Wisconsin Public Policy Prohibit Coverage for Claimants' Claims**

Even if this Court looked only at the negligent misrepresentation claim, Wisconsin law holds that negligent misrepresentation is volitional. Wisconsin public policy does not allow insurance coverage for the Archdiocese's intentional or volitional acts. See *Schinner*, 2013 WI 71 at ¶80; *Hedtcke v. Sentry Insurance Co.*, 109 Wis.2d 461, 326 N.W.2d 727 (Wis. 1982).

V. **LMI CAN SEEK AND OBTAIN RULINGS FROM THIS COURT REGARDING COVERAGE FOR THE ARCHDIOCESE'S LIABILITY ARISING FROM OTHER CLAIMANTS' CLAIMS**

LMI filed Affirmative Defenses and a Counterclaim, which seek rulings from this Court that there is no coverage for the Archdiocese's own liability for various Claims. There are no jurisdictional issues here. The Archdiocese, not the Claimants, is the only insured under the LMI Policies. The Archdiocese is obviously a party to this action, is represented by counsel and has presented arguments in efforts to defend against LMI's coverage arguments. LMI are entitled to a ruling from this Court that there is no coverage afforded to the Archdiocese for the Claims of Claimants Weissmuller and Marshall as well as all of the other Claimants who filed Proofs of Claim in the Bankruptcy Proceeding. In this regard, LMI refer this Court to and incorporate by reference herein, the arguments in their Reply in Support of their Motion for Partial Summary Judgment in Response to the Additional Plaintiffs' Brief.

VI. **CONCLUSION**

The Archdiocese does not dispute that LMI have no indemnity obligation for a number of the Claims. LMI have shown that there is no potential for coverage under the LMI Policies and established Wisconsin law for Claims against the Archdiocese alleging fraud or other volitional conduct, including negligent misrepresentation, because such claims do not constitute an "occurrence" under the LMI Policies. Moreover, Wisconsin law and public policy precludes insurance coverage to the Archdiocese under the LMI Policies for the alleged fraud, misrepresentations, or other volitional or intentional conduct. For the reasons set forth herein and in LMI's Memorandum of Law in Support of their Motion for Partial Summary Judgment, Statement of Proposed Undisputed Facts and Request for Judicial Notice, LMI respectfully request that the District Court grant their Motion for Partial Summary Judgment and enter the findings requested therein.

Dated: August 16, 2013

    Respectfully submitted,

    London Market Insurers

    By:    /s/ Catalina J. Sugayan
           Catalina J. Sugayan
           Marcos G. Cancio
           SEDGWICK LLP
           One North Wacker Drive, Suite 4200
           Chicago, Illinois 60606
           Telephone: (312) 641-9050
           Facsimile: (312) 641-9530

           Russell W. Roten
           Jeff D. Kahane
           DUANE MORRIS LLP
           865 S. Figueroa Street, Suite 3100
           Los Angeles, CA 90017-5450
           Telephone: (213) 689-7400
           Facsimile: (213) 689-7401